# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO: 3:05-CV-00495

| | |
|---|---|
| BARRY W. THOMAS,<br>Plaintiff<br><br>vs.<br><br>CINGULAR WIRELESS LLC, et al.,<br>Defendants. | )<br>)<br>)<br>) **MEMORANDUM AND**<br>) **RECOMMENDATION**<br>)<br>)<br>) |

**THIS MATTER IS BEFORE THE COURT** on Defendant Centennial Communications Corp.'s ("Centennial") "Motion to Dismiss Based on Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2)" and "Memorandum in Support ..." (Document No. 47), filed May 5, 2006; Plaintiff's Combined Response ... to Motion to Dismiss ... and Memorandum of Law" (Document No. 54), filed May 19, 2006; and Defendant's "Reply to Plaintiff's Response ..." (Document No. 57), filed June 7, 2006.

This motion has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and is ripe for disposition. Having considered the written arguments, the record, and applicable authority, the undersigned respectfully recommends that Defendant's "Motion to Dismiss Based on Lack of Personal Jurisdiction" be <u>denied.</u>

## I. FACTUAL AND PROCEDURAL HISTORY

On or about December 6, 2005, Plaintiff Barry W. Thomas ("Plaintiff") filed an Amended Complaint naming several parties, including Centennial, as defendants. Plaintiff alleges that defendants infringed United States Patent No. 4,77,354 ("the '354 patent").

Centennial is a provider of wireless and broadband telecommunication services. Centennial

1

is incorporated in Delaware and headquartered in New Jersey. Plaintiff accuses Centennial of patent infringement under 35 U.S.C. § 271, by selling wireless telephone handsets that, alone or in combination with services provided by Centennial or at its direction, have infringed one or more claims of the '354 patent, and by actively inducing others to use those infringing handsets.

Centennial denies that it has the minimum contacts necessary for this Court to exercise jurisdiction consistent with the constitutional due process requirement. Centennial contends that it has no equipment, assets, employees, distributors, sales representatives, agents or offices in North Carolina; that it does not own, lease, or rent property in North Carolina; and that it does not make, use, sell or offer to sell in North Carolina wireless telephone handsets, nor does it induce others to do so. Further, Centennial denies directing advertising or marketing to North Carolina or its residents and does not operate any wireless networks in North Carolina. Centennial is not registered to do business in North Carolina and pays no income taxes in North Carolina.

Centennial thus claims its contacts with North Carolina are incidental at best. However, to allow its customers to operate when outside Centennial service areas, Centennial has entered into roaming agreements with other companies. Centennial is a party to approximately seven contracts with other wireless carrier companies whose respective coverage areas include parts of North Carolina, but Centennial contends none of its roaming agreements are purposefully directed to North Carolina - rather, the roaming agreements cover the geographic region(s) that each company has in its respective coverage area.

Centennial contends that the Complaint should be dismissed for lack of personal jurisdiction. In support of that contention, Centennial asserts that its contacts with North Carolina are insufficient to confer general or specific personal jurisdiction. Centennial further asserts that any exercise by

this Court of jurisdiction over the company would violate its constitutional guarantees of due process.

Plaintiff contends that Centennial's contacts with, and the activity of its customers in, North Carolina is purposeful and systematic, and is both facilitated and encouraged by Centennial in an attempt to serve its customers' demand for wireless services while in North Carolina.

## II. DISCUSSION

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure permits a federal court to exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997).

> Federal Circuit law governs personal jurisdiction determinations in patent cases. "Determining whether specific personal jurisdiction over a nonresident defendant is proper entails two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due process."

Colida v. LG Electronics, Inc., 77 Fed. Appx. 523, 524 (Fed. Cir. 2003) (citations omitted).

Section 1-75.4 of the North Carolina General Statutes, the statute permitting state courts to exercise personal jurisdiction over non-resident defendants, has been construed to extend personal jurisdiction over such defendants to the full extent permitted by the Due Process Clause of the United States Constitution. Christian Sci. Bd. of Dir. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Accordingly, what would otherwise be a two-step "inquiry merges into a single issue of whether [Centennial] has the requisite minimum contacts with North Carolina to satisfy due process." CEM Corp. v. Pers. Chemistry, AB, 192 F. Supp. 2d 438, 440 (W.D. N.C. 2002).

> [W]hen a defendant's contacts with the forum state are continuous and systematic, irrespective of whether the transaction in question had sufficient contacts with the state, a court may exercise *general* personal jurisdiction over the defendant. In the absence of continuous and systematic contacts, a court may still exercise *specific* personal jurisdiction when the contacts related to the cause of action and create a substantial connection with the forum state.

Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000) (citations omitted) (emphasis in original).

**General Personal Jurisdiction**

Given the requirement that minimum contacts to support general personal jurisdiction be continuous and systematic, it is clear that the threshold for establishing general personal jurisdiction is a high one. ESAB Group, 126 F.3d at 623-24. Indeed, the Fourth Circuit disfavors a broad interpretation of general jurisdiction and instead restricts the exercise of such jurisdiction to those instances in which there is continuous, substantial activity of a nature such as to justify suit. Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199-1200 (4th Cir. 1993).

In this case, it is undisputed that Centennial is not incorporated or headquartered in North Carolina. It does not own, lease or rent property in North Carolina and does not maintain offices or a bank accounts within North Carolina. It has never paid state income taxes in North Carolina. Furthermore, Centennial does not advertise or market in the state and is not registered to do business in North Carolina. Although it is arguable that Centennial's activity through designated network carriers is continuous, Plaintiff does not allege that Centennial is subject to general jurisdiction. Instead, Plaintiff's "allegation of personal jurisdiction is founded upon specific acts of Centennial by which it has encouraged, facilitated, and actively induced its customers' use of their infringing wireless handsets within North Carolina." (Plaintiff's ... Response to Motion to Dismiss ...." p. 3).

For the foregoing reasons, the undersigned concludes that this Court will not exercise general personal jurisdiction over Centennial.

**Specific Personal Jurisdiction**

A court may exercise specific personal jurisdiction over a defendant if the contacts relate to the cause of action asserted against the defendant and create a "substantial connection with the forum state." Diamond Healthcare of Ohio, 229 F.3d at 450 (citation omitted). The Fourth Circuit has summarized the standard for the exercise of specific personal jurisdiction as follows:

> [T]he test to be applied in considering whether the reach of personal jurisdiction inquires whether (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945-46 (4th Cir. 1994).

A contract with a resident of a forum state does not necessarily evince the requisite substantial connection to the forum state, even if the dispute arises out of the contract. Le Bleu Corp. v. Std. Capital Group, Inc., 11 Fed. Appx. 377, 380, 2001 WL 672066, *2 (4th Cir. 2001) (citing Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)). Instead, the contract itself

> must have a substantial connection with the State, so that the quality
> and nature of a defendant's relationship to the forum can in no sense
> be viewed as random, fortuitous, or attenuated.

Id. (quotations omitted) (citing Burger King, 471 U.S. at 479-80). Moreover, only contacts related

5

to the contract at issue are relevant to the specific personal jurisdiction analysis. CEM Corp. v. Pers. Chemistry, AB, 55 Fed. Appx. 621, 625, 2003 WL 122510, *3 (4th Cir. 2003) (unpublished) (citations omitted).

Although this Court cannot determine based on the memoranda provided by the parties thus far the full extent of Centennial's contacts with North Carolina (i.e. how many customers and how often they use the services provided), it is apparent that the contacts are significant enough to at least meet the standard for specific jurisdiction. Centennial acknowledges that it contracts with approximately seven wireless carrier companies whose coverage areas include parts of North Carolina. Centennial argues that "[n]one of the roaming agreements are purposefully directed to North Carolina" and yet these contracts with seven other wireless networks ensure that Centennial customers will be able to use their alleged patent infringing equipment and services in North Carolina. Clearly, Centennial has made concerted efforts to allow, if not encourage, its customers and products to flow into this jurisdiction.

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States ..... The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980). Because Centennial systematically provides for service for its customers and products in North Carolina, the undersigned concludes it has created a substantial connection to this forum.

Moreover, it is not unreasonable to subject Centennial to jurisdiction in this state. Under the circumstances of this case, currently consolidated with six other cases and multiple defendants, it is most efficient and consistent with traditional notions of fair play and substantial justice for this Court to maintain jurisdiction over Centennial in this matter. Considering the Defendant is a Delaware corporation headquartered in New Jersey with admitted operations in Indiana, Michigan, Ohio, Louisiana, Mississippi and Texas, the undersigned does not find that the Defendant will be unduly burdened by litigating in North Carolina. Furthermore, it is squarely in the interests of the forum state, the plaintiff, as well as judicial economy and consistency to deny defendant's motion to dismiss for lack of personal jurisdiction.

Beverly Hills Fan Company v. Royal Sovereign Corp. and Ultec Enterprises Co., Ltd., 21 F.3d 1558 (Fed. Cir. 1994) involves similar issues of patent infringement, jurisdiction and stream of commerce. In Beverly, a holder of a design patent for fans brought a complaint for infringement against a manufacturer and importer of alleged infringing fans. Plaintiff alleged that defendants were infringing and inducing infringement of their patent by selling the accused fan to Virginia customers through intermediaries. Defendants sought to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The U.S. District Court for the Eastern District of Virginia declined to exercise personal jurisdiction over defendants – Ultec, incorporated in China and manufacturing in Taiwan, and Royal, incorporated in New Jersey.

On appeal, the Federal Circuit Court reversed and remanded, surmising that

> insofar as it relates to jurisdiction in Virginia, . . . Royal is placing the accused fans in the chain of commerce, which includes shipping fans into Virginia for sale to customers through an intermediary . . . [f]rom these ongoing relationships, it can be presumed that the

7

>    distribution channel formed by defendants . . . was intentionally
>    established, and that defendants knew, or reasonably could have
>    foreseen, that a termination point of the channel was Virginia.

Id. at 1563-64.

Similarly, in this case, Centennial through its intermediaries (seven wireless network carriers covering North Carolina) has established an ongoing channel into this forum for its customers to use its products and services. Since they intentionally contracted to provide service in the geographic region of North Carolina, it was reasonably foreseeable that Centennial customers and products would avail themselves of this jurisdiction. Further bolstering plaintiff's claim for personal jurisdiction is the fact that the use of these products is at the heart of the plaintiff's infringement claim. When "[t]he cause of action for patent infringement is alleged to arise out of these activities [n]o more is usually required to establish specific jurisdiction." Id. at 1565.

Accordingly, the undersigned recommends that the motion to dismiss for lack of personal jurisdiction be denied.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant's "Motion to Dismiss Based on Lack of Personal Jurisdiction" (Document No. 47) be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. United States v. Ridenour,

889 F.2d 1363, 1365 (4th Cir. 1989); <u>United States v. Rice</u>, 741 F. Supp. 101, 102 (W.D. N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to *de novo* review by the district court, <u>Ridenour</u>, 889 F. 2d at 1365, and may preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties <u>and to the Honorable Robert J. Conrad, Jr.</u>

**IT IS SO RECOMMENDED**, this 18th day of September, 2006.

Signed: September 18, 2006

David C. Keesler
United States Magistrate Judge