UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05CV495

| | |
|---|---|
| BARRY W. THOMAS, | ) |
| | ) |
|     Plaintiff, | )     <u>ORDER</u> |
| | ) |
| v. | ) |
| | ) |
| CENTENNIAL COMMUNICATIONS | ) |
| CORP. ET AL., | ) |
| | ) |
|     Defendants. | ) |
| | ) |

On May 5, 2006, Centennial moved to dismiss this patent infringement action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Pursuant to its standing orders of designation and 28 U.S.C. § 636, the Court referred the motion to the magistrate judge for a recommendation.

Presently before the Court is the Centennial's timely filed objection to the magistrate judge's Memorandum and Recommendation that Centennial's motion to dismiss be denied. The Court, based on its de novo review, agrees with the defendant that the magistrate judge erroneously applied Fourth Circuit law instead of Federal Circuit law in analyzing whether this Court has specific personal jurisdiction over Centennial. Furthermore, the Court concludes that Centennial made no attempt to solicit business in North Carolina or to benefit from the North Carolina market, and thus Plaintiff Thomas has failed to make a prima facie case for purposes of the Due Process clause of the federal Constitution. The reasons for the Court's decision follow.

1

**BACKGROUND**

The facts upon which the jurisdictional inquiry turns are undisputed. Thomas accuses Defendant Centennial of infringing, inducing infringement of and/or contributorily infringing one or more claims of his now-expired United States Patent No. 4,777,354 ("the '354 patent") by using, selling, and/or offering to sell wireless telephone handsets that are covered by the patented invention. Thomas contends that Centennial intended that the infringing products be used in North Carolina.

Centennial is a Delaware corporation headquartered in New Jersey. Its only operations in the continental United States are in parts of Indiana, Michigan, Ohio, Louisiana, Mississippi and Texas. It does not advertise, solicit customers, operate any facilities or otherwise conduct business in North Carolina. Moreover, its website informs potential customers that Centennial does not sell phones or services in North Carolina. Because Centennial does not provide service in all parts of the country, it has entered into seven roaming agreements with other wireless carriers – none of which are organized or headquartered in North Carolina – to enable its customers to receive cellular service when they are outside of their local calling areas. Centennial charges its customers more for roaming than for on-network air-time, and its customer service agreement specifically warns that service may be terminated if "more than 50% of [the customer's] voice or data usage is outside of our owned systems over consecutive billing cycles." During the twelve-month period ending May 31, 2006, 0.028% of Centennial's customers' minutes of use were from roaming in North Carolina.

**DISCUSSION**

1.  Applicable Law

The Court begins by noting that, according to the Federal Circuit, its law, "rather than that

2

of the regional circuit in which the case arose," is applicable when the question before the Court is the exercise of personal jurisdiction over an out-of-state accused patent infringer. See Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995); cf. Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003) (applying regional circuit law to non-patent claims where analysis "with respect to non-patent counts is not intimately linked to patent law.").

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a motion to dismiss based upon a defense that the Court lacks personal jurisdiction over a defendant. As the plaintiff, Thomas bears the burden of establishing that this Court can exercise personal jurisdiction over Centennial. However, as no evidentiary hearing has been held on the matter, Thomas is required only to "make a prima facie showing with the record viewed in the light more favorable to him." Drepenyl Animal Health, Inc. v. Univ. of Toronto Innovations Foundation, 297 F.3d 1343, 1347 (Fed. Cir. 2002).

2.  Analysis of Jurisdiction

The question for this Court is whether it may exercise specific personal jurisdiction over the defendant.[1]

Under Federal Circuit precedent, determining whether specific personal jurisdiction over a nonresident defendant is proper involves two inquiries: whether a forum state's long-arm statute permits the assertion of jurisdiction, and whether assertion of personal jurisdiction violates federal due process. Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001) (citations omitted).

In this case, North Carolina's long-arm statute permits service of process to the limits of the due process clauses of the federal Constitution. See N.C.G.S. § 1-75.4 (North Carolina's long-arm

---

[1] Neither party objects to the magistrate's conclusion that the Court has no general jurisdiction over the defendant. Under general jurisdiction, the exercise of jurisdiction is proper where the defendant has "continuous and systematic" contacts with the forum state, even if those contacts are not related to the cause of action. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Therefore, the Court will forego any analysis of general jurisdiction because the magistrate did not clearly err in making that determination.

statute); Dillion v Numismatic Funding. Corp., 231 S.E.2d 629, 630 (NC 1977). Therefore, the personal jurisdiction analysis in this case narrows to one inquiry: whether jurisdiction comports with due process.

Under the governing framework of personal jurisdiction, as developed in the Supreme Court's jurisprudence, the exercise of jurisdiction over nonresident defendants of a forum state is not inconsistent with due process if the nonresident defendants have certain "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1940). In general, there must be "some act" by which defendants "purposefully avail[ ]" themselves of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). The contact made by a defendant must create a "substantial connection" to the forum state. Defendants must deliberately "engage[] in significant activities within a State" or have "created 'continuing obligations' between [themselves] and residents of the forum" that "proximately result from the actions by the defendant[s] themselves," such that it is "presumptively not unreasonable to require [defendants] to submit to the burdens of litigation in that forum as well." Id. at 475-76 (citations and quotations omitted).

The Federal Circuit has adopted a three-factor inquiry to determine whether jurisdiction over an out-of-state defendant comports with due process. A court looks to whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair. See Inamed Corp., 249 F.3d 1356, 1360 (citing Akro, 45 F.3d at 1545); see also

Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). "The first two factors correspond to the 'minimum contacts' prong of the International Shoe analysis, and the third factor corresponds with the 'fair play and substantial justice' prong." Id. (citing Akro, 45 F.3d at 1545). If the plaintiff meets the burden of establishing minimum contacts, the defendant must then prove that the exercise of jurisdiction is unreasonable. Id. (citing Akro, 45 F.3d at 1546).

Thomas's principal argument is based on the theory of induced or contributory infringement. He relies on Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994), to argue that specific personal jurisdiction exists in North Carolina because Centennial actively encouraged its customers to travel and use their cell phones there by virtue of its roaming agreements with service providers. This argument is unpersuasive.

While Centennial need not have acted within North Carolina to have induced infringement (see Trustees of Columbia University in City of New York v. Roche Diagnostics GmbH, 150 F. Supp.2d at 191 (D. Mass. 2001) ("extraterritorial activity that induces direct infringement within the United States may incur liability")), the fact that the allegedly infringing product was used, or even sold, in North Carolina is not dispositive. Rather, "cases finding specific jurisdiction for inducement have turned on whether the defendants purposefully directed activities at the forum state or its residents." Sitrick v. Freehand Sys., Inc., No. 02-1568, 2004 WL 2191491 (N.D. Ill. Sept. 27, 2004) (citing Beverly Hills Fan, 21 F.3d at 1566-68).

In the instant case, the Court finds that it is clear that Centennial did not purposefully conduct

5

or direct its activities at residents of North Carolina or the North Carolina market. Indeed, the undisputed facts show that North Carolina residents are actively discouraged from purchasing or using Centennial's products and services. Furthermore, any alleged act of inducement occurred outside of the North Carolina, and was no more directed towards North Carolina than to any other state in which the accused products were used. Id. at *4.

And the Court finds that Centennial's only connection with North Carolina – its agreements with other wireless service providers that provide nation-wide roaming services for its customers – cannot be construed as the purposeful direction of activities at North Carolina. See 3D Systems, 160 F.3d at 1380. Simply having a contract with a company that has contacts with a state is not sufficient to show that Centennial attempted to solicit business in North Carolina or benefit from the North Carolina market. Red Wing Shoe, 148 F.3d at 1361 ("Red Wing's flawed theory would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide . . . [D]oing business with a company that does business in Minnesota is not the same as doing business in Minnesota."). Nor is Centennial is subject to personal jurisdiction based on the mere foreseeability that third-parties may use its products in North Carolina. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 296-98 (1980) ("[A] defendant must purposefully avail itself of the privilege of conducting activities within the forum").

Because due process does not allow this Court to exercise personal jurisdiction over Centennial, this Court need not consider whether exercise of personal jurisdiction over Centennial would be fair and reasonable. See Burger King, 471 U.S. at 476 ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction

would comport with 'fair play and substantial justice.' ").

## CONCLUSION

Because Plaintiff Thomas has failed to offer facts that, when viewed in the light most favorable to him, demonstrate that Centennial purposefully directed its activities at the North Carolina or its residents, the Court Thomas finds that has failed to make his prima facie case for purposes of the Due Process clause of the federal Constitution.

**THEREFORE, IT IS HEREBY ORDERED** that Defendant Centennial's Objections to the Magistrate's Memorandum and Recommendation (Doc. No. 67) be **SUSTAINED**, and that Defendant Centennial's Motion to Dismiss (Doc. No. 47) be **GRANTED**.

Signed: December 19, 2006

Robert J. Conrad, Jr.
Chief United States District Judge